IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) )  Case No. 23-CR-00190-GKF |
| ISAAC JOEL RAMIREZ-FLORES, | ) ) ) |
| Defendant. | ) ) |

**OPINION AND ORDER**

This matter comes before the court on the Motion to Suppress Evidence [Doc. 33] of defendant Isaac Joel Ramirez-Flores. For the reasons set forth below, the motion is denied.

**Background/Procedural History**

On June 5, 2023, a grand jury returned an Indictment charging Mr. Ramirez-Flores with one count of Possession of Heroin with Intent to Distribute pursuant to 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(vi); one count of Possession of Fentanyl with Intent to Distribute pursuant to 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(i); and one count of Possession of Methamphetamine with Intent to Distribute pursuant to 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(viii). [Doc. 14]. This matter is set for trial on October 23, 2023. [Doc. 32].

In advance of trial, Mr. Ramirez-Flores filed the motion to suppress seeking to preclude admission of any evidence obtained as a result of a May 9, 2023 search of the residence located at 110 N. 128th E. Place, Tulsa, Oklahoma, where Mr. Ramirez-Flores was located and arrested. [Doc. 33]. The government responded in opposition. [Doc. 34]. The court held an evidentiary hearing on the motion on October 3, 2023. [Doc. 36]. During the hearing, the parties stipulated to the contents of the exhibits attached to Mr. Ramirez-Flores's motion to suppress, as well as

certain facts.[1]  [Doc. 36]. Additionally, subsequent to the hearing, the parties filed a Stipulation To Evidence for Purposes of Hearing on Defendant's Motion to Suppress Evidence [Doc. 37], which memorialized the parties' prior stipulations and, further, identified all law enforcement personnel involved in the May 9, 2023 search.

## Relevant Facts

On Apil 4, 2023, Tulsa Police Department Detective/Drug Enforcement Administration Task Force Officer Anthony Finnegan executed an Affidavit for Search Warrant for Installation and Use of Tracking Device, Title 13 O.S. 177.6 Form. [Doc. 33-1]. Therein, Detective Finnegan averred that he had received information from a DEA confidential source that the source had been contacted via text message by telephone number (909) 827-6381 informing the source that fentanyl and heroin were available in the Tulsa area.[2]  [Doc. 33-1, pp. 1-2]. At the direction of the "controlling investigators," the confidential source contacted telephone number (909) 827-6381 to purchase heroin, and arranged to meet a courier at a designated location.[3]  [*Id.* at p. 2]. A silver

---

[1] The exhibits attached to defendant's motion to suppress are as follows:  (1) Affidavit for Search Warrant for Installation and Use of Tracking Device, Title 13 O.S. 177.6 Form, dated April 4, 2023 [Doc. 33-1]; (2) Search Warrant – Installation and Use of Tracking Device, Title 13 O.S. 177.6, dated April 4, 2023 [Doc. 33-2]; (3) Tulsa Police Department Tow-In Report, dated April 19, 2023 [Doc. 33-3]; (4) Affidavit for Search Warrant – Uniform Controlled Dangerous Substance Act for 1931 North Lewis Place, dated April 20, 2023 [Doc. 33-4]; (5) Search Warrant – Uniform Controlled Dangerous Substance Act for 1931 North Lewis Place, dated April 20, 2023 [Doc. 33-5]; (6) Affidavit for Search Warrant – Uniform Controlled Dangerous Substance Act for 110 North 128th East Place, dated May 3, 2023 [Doc. 33-6]; (7) Search Warrant – Uniform Controlled Dangerous Substance Act for 110 North 128th East Place, dated May 3, 2023 [Doc. 33-7]; (8) Criminal Docket of Northern District of Oklahoma Case No. 23-MJ-0224-JFJ [Doc. 33-8]; (9) Criminal Docket of Northern District of Oklahoma Case No. 23-MJ-00253-JFJ [Doc. 33-9]; and (10) Criminal Docket of Northern District Case No. 23-MJ-00287-MTS [Doc. 33-10].

[2] During the October 3, 2023 evidentiary hearing, the government stated that the confidential source was a DEA confidential source.

[3] Subsequent search warrant affidavits indicate that Detective Finnegan, DEA Special Agent Taylor Wilson, and Tulsa County Deputy Sheriff Officer Evan Foster, who was then assigned to the DEA, met with the confidential source. [Doc. 33-6, p. 3].

Suzuki four-door bearing Oklahoma tag no. NLQ956 ("Suzuki") arrived at the designated location, the confidential source got in and out of the vehicle, and then traveled to a neutral location where he relinquished custody of heroin to Detective Finnegan. [*Id.*]. Based on the foregoing information, as well as his training and experience, Detective Finnegan averred that probable cause existed to believe the unknown male subject, who was the driver of the Suzuki, was involved in the continuing criminal distribution of heroin within Tulsa County. [*Id.* at pp. 1-2]. Accordingly, Detective Finnegan sought a warrant to install a GPS tracking device on the Suzuki. [*Id.* at pp. 3-4]. The affidavit/application was submitted using Detective Finnegan's DEA email address. [Doc. 37, p. 2, ¶ 4].

That same day, April 4, 2023, Tulsa County Special Judge Kasey Baldwin authorized the warrant ("Tracking Warrant"). [Doc. 33-2, p. 2]. The Tracking Warrant identified the Suzuki as the property to be tracked, but did not specify a magistrate judge to whom the data must be returned. [*Id.* at p. 1]. The Tracking Warrant provided that the tracking device may be installed on the Suzuki "at any time of the day or night," but must be installed within ten days of the issuance of the warrant. [*Id.*]. Special Judge Baldwin authorized law enforcement to monitor the tracking device "for a period of sixty (60) calendar days following the issuance of the warrant." [*Id.*].

The tracking device was installed on April 6, 2023. [*Id.* at p. 4]. The Officer's Return does not specify the exact time of installation or who installed the device. [*Id.* at p. 4]. However, during the October 3, 2023 hearing, the government stated that Detective Finnegan and Deputy Evan Foster installed the device, which was a DEA tracking device.

On April 19, 2023, Tulsa Police Department officers arrested Carlos Topete-Lopez, who was driving the Suzuki. [Doc. 33-3; Doc. 33-4, p. 4; Doc. 37, p. 1, ¶ 2]. TPD arrested Mr. Topete-Lopez without knowledge of the DEA's ongoing investigation as to the Suzuki. The arrest was

strictly conducted by TPD officers and was independent of the ongoing DEA Task Force investigation. [Doc. 37, pp. 1-2, ¶ 2].

During Mr. Topete-Lopez's arrest, a warrantless search of the Suzuki was performed, and the vehicle was subsequently towed. [Doc. 37, pp. 1-2, ¶ 2; Doc. 33-4, p. 4]. The Tow-In-Report completed with respect to the Suzuki designates Mr. Ramirez-Flores as the owner of the Suzuki. [Doc. 33-3]. However, during an April 20, 2023 interview with Detective Finnegan, Deputy Foster, and Tulsa County Deputy Sherriff Ricardo Vaca, Mr. Topete-Lopez stated that he purchased the Suzuki while in Tulsa. [Doc. 33-4, pp. 4-5].

On April 20, 2023, Deputy Foster executed the Affidavit for Search Warrant – Uniform Controlled Dangerous Substance Act related to a residence located at 1931 North Lewis Place, Tulsa, Oklahoma ("Lewis Residence"). [Doc. 33-4]. In the Affidavit, Deputy Foster averred that, based on the ongoing investigation, as well as his training and experience, he believed that there was ongoing criminal activity in reference to the distribution of methamphetamine, cocaine, heroin, and fentanyl at the Lewis Residence. [*Id.* at p. 6]. That same day, on April 20, 2023, Tulsa County Special Judge Rodney Sparkman authorized a search warrant for the Lewis Residence. [Doc. 33-5].

Law enforcement executed the warrant for the Lewis Residence on April 21, 2023. No property was taken. [Doc. 33-5, p. 4]. However, during the search, officers located and photographed Mr. Ramirez-Flores's Mexican driver's license, as well as large amounts of plastic wrapping and money remitter receipts. [Doc. 33-6, p. 5]. The search warrant return does not specify the exact time that the warrant was executed, nor does it designate the officer who prepared the return. [Doc. 33-5, p. 4].

On May 3, 2023, Deputy Sheriff Foster executed an Affidavit for Search Warrant –

Uniform Controlled Dangerous Substance Act related to a residence located at 110 North 128th East Place, Tulsa, Oklahoma ("East Place Residence"). [Doc. 33-6]. In the Affidavit, Deputy Foster averred that, monitoring and reviewing the GPS data location for the GPS tracking device installed on the Suzuki, he had observed that the Suzuki frequented a trailer within close proximity of the 110 N. 128th East Place address and, further, that on April 6, 2023, Detective Finnegan conducted surveillance and observed the Suzuki parked in front of the address. [Doc. 33-6, p. 4]. Officer Foster further stated that, "[i]n the past 72 hours, members of the DEA TRO Group 1 utilized a DEA CS to purchase between 4-8 grams of heroin from a Hispanic male courier identified as Isaac Joel RAMIREZ-Flores in Tulsa, Oklahoma." [*Id.* at p. 5]. Thus, based on the ongoing investigation, as well as his training and experience, Deputy Foster believed that there was ongoing criminal activity in reference to the distribution of methamphetamine, cocaine, heroin, and fentanyl at the East Place Residence. [*Id.* at p. 6]. In the email forwarding the affidavit, application, and warrant to the Tulsa County District, Deputy Foster utilized his DEA email address and identified himself a DEA Task Force Officer. [Doc. 33-7, p. 3]. That same day, May 3, 2023, Special Judge Sparkman authorized the warrant. [*Id.*].

      Members of the DEA Tulsa Resident Office and Tulsa County Sheriff's Office executed the warrant for the East Place Residence on May 9, 2023. [Doc. 33-7, p. 4; Doc. 37, p. 2, ¶ 5(f)]. The following individuals were present for the search: (1) Tulsa County Deputy and Task Force Officer Foster; (2) TPD Detective and Task Force Officer William "Randy" MacKenzie; (3) Broken Arrow Police Department Detective and Task Force Officer Darren Zumwalt; (4) TPD Detective and Task Force Officer J. "Andy" Dawson; (5) TPD Detective and Task Force Officer Finnegan; (6) TPD Detective and Task Force Officer Mike Helton; (7) TPD Detective and TFO David Brice; (8) TPD Detective and Task Force Officer Tim Wilson; (9) DEA Acting Group

Supervisor Taylor Wilson; (10) DEA Resident Agent in Charge Kevin Pino; (11) Government Assistant Norma Valle; (12) DEA Special Agent Nicholas Sanders; and (13) Tulsa County Deputy Vaca. [Doc. 37, pp. 2-3, ¶5(f)].

Officers served the warrant on Mr. Ramirez-Flores, who was in the residence at the time. [Doc. 33-7, p. 4]. The search warrant does not specify the exact time the warrant was executed. [*Id.* at p. 4]. During the search, officers discovered fentanyl, methamphetamine, heroin, and over $15,000 in U.S. currency. [*Id.* at p. 5]. A property receipt was attached to the return, but did not specify the officer that had prepared or verified the receipt. [*Id.* at pp. 4-5]. Nor did the return indicate whether the inventory was done in the presence of another officer and verified. [*Id.*]. However, everything that was seized was turned into DEA property, and a DEA-12 receipt was left at the East Place Residence. [Doc. 37, p. 2, ¶¶ 5(a), 5(d)]. All evidence was tested at a DEA lab. [*Id.* ¶ 5(b)].

Mr. Ramirez-Flores was arrested. His *Miranda* rights were read to him from a DEA Form 13-A, and Mr. Ramirez-Flores was immediately booked on a DEA hold. [*Id.* ¶¶ 5(c), 5(e)].

On August 21, 2023, the returns for the warrants related to the Lewis Residence and East Place Residence were filed in the District Court in and for Tulsa County. [Doc. 33-5; Doc. 33-7].

On September 13, 2023, the return for the Tracking Warrant was filed in the District Court in and for Tulsa County. [Doc. 33-2]. The Officer's Return was completed by Deputy Sheriff Foster, rather than Detective Evans, and states "electronic data/data missing." [Doc. 33-2, p. 4]. The Tracking Device Warrant was not served on Mr. Ramirez-Flores until discovery in this matter.[4]

---

[4] The government conceded this fact during the October 3, 2023 hearing.

**Analysis**

Mr. Ramirez-Flores argues that the evidence obtained from the East Place Residence must be suppressed because "the search warrants related to the investigation were obtained and issued with multiple violations of Fed. R. Crim. P. 41 and in violation of his Fourth Amendment rights." [Doc. 33, p. 4]. In response, the government contends that the search was not "federal in character" and therefore Rule 41 is inapplicable. [Doc. 34, pp. 4-5].

The Tenth Circuit has recognized that "[i]f a search is a state search, with minimal or no federal involvement, the warrant need only to conform to federal constitutional requirements." *United States v. Bookout*, 810 F.2d 965, 967 (10th Cir. 1987) (quoting *United States v. Millar*, 543 F.2d 1280, 1283-84 (10th Cir. 1976)). The requirements of Federal Rule of Criminal Procedure 41 are inapplicable. *United States v. Sadlowski*, 948 F.3d 1200, 1204 (10th Cir. 2020). However, if a search is "'federal in character,' the legality of the search is conditioned on a finding that the warrant satisfies constitutional requirements **and** certain provisions of Fed.R.Crim.P. 41 'designed to protect the integrity of the federal courts or to govern the conduct of federal officers.'" *United States v. Pennington*, 635 F.2d 1387, 1389 (10th 1980) (emphasis added) (quoting *Millar*, 543 F.2d at 1284).

The Tenth Circuit has stated that "[a] search is 'federal in character' when federal officers are directly involved in carrying out the search itself and in taking immediate custody of the fruits of the search." *Bookout*, 810 F.2d at 967. The parties have stipulated that three federal agents were involved in the search of the East Place Residence, including the Acting Group Supervisor and Resident Agent in Charge.[5] Further, all of the property seized in the search was turned into

---

[5] The court further notes that, in the probable cause affidavit filed in this matter, Deputy Foster avers that DEA Special Agent Wilson field tested substances found during the search and received a presumptive positive field test for methamphetamine and heroin. [Doc. 1, p. 5].

the DEA for testing. [Doc. 37, pp. 2-3, ¶¶ 5(a), 5(b), 5(f)]. Thus, based on the stipulated facts, "federal officers [were] directly involved in carrying out the search itself" and took "immediate custody of the fruits of the search." *Bookout*, 810 F.2d at 967. Strictly applying the rule as articulated in *Bookout*, which is binding upon this court, the search of the East Place Residence was "federal in character."

During the October 3 hearing, the government urged the court to look beyond these facts, and specifically noted that the United States Attorney's Office was not involved in submitting the warrants. The Tenth Circuit has "suggested that a warrant will retain its 'state character' if there was only 'minimal . . . federal involvement.'" *United States v. Barrett*, 496 F.3d 1079, 1090 (10th Cir. 2007) (quoting *United States v. Millar*, 543 F.2d 1280, 1283 (10th Cir. 1976)). However, the federal involvement in this matter cannot fairly be characterized as "minimal." Information obtained from a DEA confidential source helped to initiate the investigation, and officers subsequently utilized a DEA confidential source to purchase between 4-8 grams of heroin from a Hispanic male courier identified as Mr. Ramirez-Flores. DEA Special Agent Wilson, with state officers, met with confidential sources on several occasions. Detective Finnegan and Deputy Foster forwarded the search warrant affidavits, applications, and warrants from their respective DEA email addresses. Further, the DEA provided the tracking device installed on the Suzuki. As set forth above, the property seized from the East Place Residence was taken into DEA custody, a DEA-12 receipt was left at the residence, and the evidence was tested at the DEA lab. Finally, Mr. Ramirez-Flores was read his *Miranda* rights from a DEA Form 13-A, and he was immediately booked on a DEA hold. The undisputed facts demonstrate "significant federal involvement" and therefore the search was federal in nature. *See United States v. Rios,* 611 F.2d 1335, 1347, 1347 n.22 (10th Cir. 1979) ("Although the warrant was issued by a state judge, on a state form, on

application of a state narcotics agent, and the search was apparently conducted by state agents, the federal DEA agent set up the transaction with the [informants] and provided the state agents with the essential information used in the affidavit for the warrant. Moreover, the DEA agent was present when the state officers obtained the warrant from the state judge and subsequently took possession of the items that had been seized.").

Because the search was federal in character, Federal Rule of Criminal Procedure 41 applies. *Pennington*, 635 F.2d at 1389. Mr. Ramirez-Flores has identified eight Rule 41 violations with respect to the Tracking Warrant and four Rule 41 violations with respect to the Lewis Place and East Place Warrants.[6] The government did not contest the asserted violations in either its written response or during the October 3 hearing. Thus, the court presumes that Rule 41 has been violated.

When Rule 41 is violated, the court must first determine whether the violation or violations "rise[] to the level of a Fourth Amendment violation." *United States v. Krueger*, 809 F.3d 1109, 1113 (10th Cir. 2015). Mr. Ramirez-Flores argues that the Rule 41 violations constitute a Fourth Amendment violation, but offers no specific argument.

Generally, "[t]he Fourth Amendment requires that search warrants be issued only 'upon

---

[6] Mr. Ramirez-Flores identifies the following Rule 41 violations with respect to the Tracking Device warrant: (1) the warrant was obtained by a state court judge who lacked authority to issue a tracking device warrant; (2) the warrant did not designate a federal magistrate to whom the warrant should be returned; (3) the warrant authorized the use of the device in excess of forty-five days; (4) the warrant authorized the installation of the device during the night without good cause; (5) the evidence obtained from the Tracking Device was listed as "data missing," and no inventory from the warrant was submitted; (6) the Tracking Warrant was not served on Mr. Ramirez-Flores; and (7) the warrant return did not include the identities of the persons who installed the tracking device, where the device was installed, or the period of time during which the device was used; and (8) the warrant was not returned within ten days. [Doc. 33, pp. 10-11]. With respect to the Residence Warrants, Mr. Ramirez-Flores identifies the following Rule 41 violations: (1) the warrants were not submitted to a federal magistrate judge; (2) the returns do not indicate the exact date and time the warrants were executed; (3) the warrants were not promptly returned; and (4) the return for the East Place Warrant was not verified and there is no indication that the inventory was performed in the presence of another officer and the defendant or another credible person. [*Id.* at p. 11].

9

probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.'" *Dalia v. United States*, 441 U.S. 238, 255 (1979). The U.S. Supreme Court has interpreted the Fourth Amendment to require three things: (1) "warrants must be issued by neutral, disinterested magistrates"; (2) "those seeking the warrant must demonstrate to the magistrate their probable cause to believe that the evidence sought will aid in a particular apprehension or conviction for a particular offense"; and (3) the warrant "must particularly describe the 'things to be seized,' as well as the place to be searched." *Dalia*, 441 U.S. at 255 (internal citations omitted). As previously stated, Mr. Ramirez-Flores does not explicitly challenge any of these requirements.[7] Based on the court's review, the warrants were issued by a neutral—albeit state—magistrate, demonstrated probable cause, and particularly described the place and things to be searched. Thus, Mr. Ramirez-Flores has not demonstrated that the Rule 41 violations "rise[] to the level of a Fourth Amendment violation." *Krueger*, 809 F.3d at 1113; *see also Rios*, 611 F.2d at 1344 (quoting *Rakas v. Illinois*, 439 U.S. 128, 130-31 n.1 (1978)) ("It is well established that '[t]he proponent of a motion to suppress has the burden of establishing that his own Fourth Amendment rights were violated by the challenged search or seizure.'").

If the Rule 41 violation "is not of constitutional import, [the court] then consider[s] whether the defendant can establish that, as a result of the Rule violation, '(1) there was 'prejudice' in the sense that the search might not have occurred or would not have been so abrasive if the Rule had

---

[7] In his brief, Mr. Ramirez-Flores suggests that the person with the phone number (909) 827-6381 was "entrapped by law enforcement to commit the crime of distributing drugs." [Doc. 33, p. 10]. However, "[e]vidence that a government agent solicited, requested or approached the defendant to engage in criminal conduct, standing alone, is insufficient to constitute inducement." *United States v. Ortiz*, 804 F.2d 1161, 1165 (10th Cir. 1986). Likewise, Mr. Ramirez-Flores asserts that the April 19, 2023 stop of Mr. Topete-Lopez "was clearly illegal" as the police did not have reasonable suspicion for the *Terry* stop or probable cause to conduct a search. [Doc. 33, p. 11]. But, during the October 3 hearing, defense counsel conceded that she was not asserting a constitutional violation on behalf of Mr. Ramirez-Flores in this regard.

been followed, or (2) there is evidence of intentional and deliberate disregard of a provision in the Rule." *Krueger,* 809 F.3d at 1114 (quoting *Pennington*, 635 F.2d at 1390). "Unless the defendant can establish prejudice or intentional disregard of the Rule, a non-constitutional violation of Rule 41 will not, by itself, justify suppression." *Krueger,* 809 F.3d at 1114; *see also Sadlowski*, 948 F.3d at 1204 ("Suppression is only warranted if the rule violation was (1) of constitutional magnitude; (2) prejudicial; or (3) intentional and deliberate.").

There is no evidence that officers intentionally or deliberately disregarded Rule 41. Rather, the primary investigators were members of the DEA's Task Force, Tulsa Resident Office, a collaboration between state and federal law enforcement officers. Task Force members investigate crimes under both state and federal credentials and may approach either state or federal prosecutors to discuss the potential for filing charges. Under the circumstances, Mr. Ramirez-Flores has failed to demonstrate intentional or deliberate violations of Rule 41.[8]

Looking next to whether the Rule 41 violations prejudiced Mr. Ramirez-Flores, defendant first argues that he was prejudiced based on the loss of the data from the Tracking Device. Mr. Ramirez-Flores contends that "because the return of the Suzuki warrant was not timely completed, the data from the tracker was lost and the Defendant is left to wonder if potentially exculpatory information was contained in that data." [Doc. 33, p. 13]. But, during the October 3 hearing, the government represented that a "glitch" in the Tracking Device prevented the data from being retained. Thus, it does not appear that the data was lost because the Tracking Device Warrant was not timely returned. Rather, the data was simply not retained and would have been lost, regardless of when a return was filed. Thus, Mr. Ramirez-Flores has not established prejudice based on loss of the Tracking Device data.

---

[8] Significantly, Mr. Ramirez-Flores characterizes law enforcement's conduct as "gross[ly] negligent." [Doc. 33, p. 13].

11

In addition to loss of the Tracking Device data, Mr. Ramirez-Flores asserts he was prejudiced because the East Place Warrant would not have issued but for the Rule 41 violations, as "[o]fficers would not have known about the two residences without the data that they obtained from the Suzuki warrant," and without the information obtained from the Tracking Device Warrant, "there was insufficient evidence to form probable cause for the issuance of" the East Place Warrant. [Doc. 33, p. 13]. In this regard, Mr. Ramirez-Flores argues this matter is analogous to *Kruger*.

In *Kruger*, a federal magistrate judge in the District of Kansas issued a warrant authorizing law enforcement to search a residence in Oklahoma, as well as a vehicle that, although owned by a Kansas resident, was located in Oklahoma. *Krueger,* 809 F.3d at 1111. On appeal, defendant asserted that the warrant violated Rule 41(b)(1) because the Kansas magistrate judge did not have authority to issue a warrant for property located in Oklahoma.[9] *Id.* at 1113.

At the outset, the Tenth Circuit acknowledged, "[w]e expressly do not address the propriety of suppression when, at the time of issuance, it is genuinely unclear whether the federal magistrate judge has authority to issue an outside-of-district warrant." *Krueger*, 809 F.3d at 1113 n.4. Rather, the court framed the inquiry as "whether suppression is justified when a warrant is issued by a federal magistrate judge who *clearly lacks authority* to do so under Rule 41(b)(1)." *Id.* at p. 1115 (emphasis added).[10] In this regard, the court recognized that its inquiry "implicate[d] 'substantive judicial authority.'" *Id.* at p. 1115 n.7 (quoting *United States v. Berkos*, 543 F.3d 392, 397 (7th

---

[9] Rule 41(b)(1) provides that, "[a]t the request of a federal law enforcement officer or an attorney for the government . . . a magistrate judge with authority in the district—or if none is reasonably available, a judge of a state court of record in the district—has authority to issue a warrant to search for and seize a person or property located within the district." Fed. R. Crim. P. 41(b)(1).

[10] "[G]iven the obviousness of th[e] Rule 41 defect," the government had conceded that the relevant warrant violated Rule 41(b)(1). *Id*. at pp. 1113-14.

Cir. 2008)).

Adopting a standard "for determining whether a defendant established prejudice as a result of a Rule 41(b)(1)" that required the court to consider "whether the issuing federal magistrate judge could have complied with the Rule," the circuit reasoned as follows:

> The Government sought and obtained [the warrant] from a federal magistrate judge in the District of Kansas who *clearly lacked* Rule 41 authority to issue a warrant for property already located in Oklahoma. Had the magistrate judge recognized that *clear and obvious* fact, he surely would not have issued [the Warrant]. And, had [the Warrant] not been issued, the Oklahoma search would not have occurred as it did, meaning that the Government would not have had occasion to secure [defendant's] cooperation or seize his hard drive and computer.

*Id.* at pp. 1116-17 (emphasis added). In light of the "Government's gross negligence in failing to comply with Rule 41(b)(1)," the court declined to consider whether the government may have been able to secure a warrant from an Oklahoma magistrate judge. *Id.* at p. 1117. Reasoning that defendant had met his burden to establish prejudice and, further, "suppression furthers the purpose of the exclusionary rule by deterring law enforcement from seeking and obtaining warrants that clearly violate Rule 41(b)(1)," the Circuit affirmed the district court's order granting defendant's motion to suppress. *Id.* However, the court contrasted the instant situation to where "officers mistakenly, but inadvertently, presented the warrant to an incorrect magistrate." *Id.* at 1117 n.10.

*Krueger* is distinguishable. As recognized by then-Judge Gorsuch in his concurrence, "[t]he Federal Magistrates Act identifies only three geographic areas in which a federal magistrate judge's powers are effective . . . [and the] magistrate judge purported to exercise power in none of these places." *Krueger,* 809 F.3d at 1118 (Gorsuch, concurring). Thus, there were no circumstances under which the magistrate judge could have issued the warrant.

In contrast, Rule 41(b)(1) permits state judges to issue warrants to search or seize a person or property upon a showing that a federal magistrate judge was not "reasonably available." Thus,

13

Special Judge Sparkman did not lack "substantive judicial authority" as in *Krueger*. *See Krueger*, 809 F.3d at 1116.

Mr. Ramirez-Florez contends suppression is warranted because Rule 41(b)(4) does not permit a state court judge to issue a warrant to install a tracking device. However, Oklahoma statutes permit "[a]ny magistrate" to issue a warrant authorizing the installation or use of a tracking device in a vehicle. *See* Okla. Stat. tit. 13, § 177.6(A). And, unlike *Krueger*, this was not a situation where it was "clear and obvious" that the state-court judge lacked authority. *Krueger*, 809 F.3d at 1116-17. As previously stated, this investigation proceeded as a joint task force operation between state and federal agencies, which may have resulted in state or federal prosecution. Accordingly, this situation was more akin to an instance where "officers mistakenly, but inadvertently, presented the warrant to an incorrect magistrate," a situation not considered in *Krueger*. *Id.* at 1117 n.10. Under the circumstances, *Krueger* is not dispositive.[11]

Instead, the court concludes this matter is more akin to *Pennington*. *Pennington,* 635 F.2d at 1390. In that case, the court concluded that the fact that a warrant was issued by a state, rather than federal, official "d[id] not require invoking the exclusionary rule." *Id.* As in *Pennington*, there is no evidence to indicate that a magistrate judge would not have issued the warrant but for the violation of the Rule, or that the search would not have been "so abrasive" had the Rule been followed. *Id*. Thus, insofar as the state judge issuing the Tracking Device Warrant violated Rule 41, the violation does not justify invoking the exclusionary rule. *Id.*

Nor do the remaining violations, or the combined effect thereof, warrant exclusion. The identified violations are ministerial, and the Tenth Circuit has never concluded that similar violations justify suppression. *See Krueger,* 809 F.3d at 1115 n.7 (collecting cases).

---

[11] Further, as discussed above, *Krueger* was limited to Rule 41(b)(1). A tracking device warrant is governed by Rule 41(b)(4). *See Krueger*, 809 F.3d at 1116-17.

Finally, suppression would not further the purposes of the exclusionary rule. As recognized by the U.S. Supreme Court "[t]o trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system." *Herring v. United States,* 555 U.S. 135, 144 (2009). As discussed above, there is no evidence of a willful or deliberate violation of Rule 41. And, although characterized as "federal in character" for purposes of Rule 41, as previously stated, the investigation proceeded through the combined efforts of state and federal law enforcement in the joint task force. Further, both state and federal resources were utilized. That federal charges ultimately were filed does not demonstrate deliberate conduct such that exclusion would have the desired deterrent effect. Rather, exclusion would be detrimental to the justice system due to the chilling effect on joint law enforcement operations. Joint task forces are of critical importance, particularly in this district, located in Indian Country. Because suppression would not further the purposes of the exclusionary rule, for this additional reason, Mr. Ramirez-Flores's motion to suppress must be denied.

## Conclusion

WHEREFORE, the Motion to Suppress Evidence [Doc. 33] of defendant Isaac Joel Ramirez-Flores is denied.

IT IS SO ORDERED this 10th day of October, 2023.

GREGORY K. FRIZZELL
UNITED STATES DISTRICT JUDGE